■ In the Matter of LOUISE BUTLER, Respondent, v JOSEPH J. CHRISTIAN, as Chairman of the New York City Housing Authority, Appellant. — In a proceeding pursuant to CPLR article 78 to review a determination of the New York City Housing Authority (the authority) to terminate petitioner's tenancy, the appeal is from so much of a judgment of the Supreme Court, Kings County (Kartell, J.), entered August 22, 1980, as granted the petition to the extent of vacating the authority's determination finding petitioner ineligible for continued tenancy, but granted the authority leave to commence further proceedings, including the holding of a de novo hearing to determine petitioner's eligibility for continued tenancy. Judgment affirmed, insofar as appealed from, without costs or disbursements. The record indicates that the hearing officer relied on evidence dehors the record in reaching his determination and that petitioner was not afforded an opportunity to rebut this evidence. Petitioner was thus deprived of due process (see Escalera v New York City Housing Auth., 425 F2d 853; Goldberg v Kelly, 397 US 254). The reliance on outside evidence was also violative of the authority's own hearing procedures, which state that a hearing officer must base his determination solely on the oral and written evidence presented at the hearing (see Matter of Jenkins v Christian, 53 AD2d 583). We have examined the authority's other arguments and find them to be without merit. Mangano, J. P., Gulotta and Brown, JJ., concur.

Thompson, J., dissents and votes to reverse the judgment, insofar as appealed from, confirm the determination, and dismiss the proceeding on the merits, with the following memorandum: I would confirm the determination of the authority. I believe that there was substantial evidence in the record to justify the determination to terminate the petitioner's tenancy without any reliance on material supposedly dehors the record. Louise Butler has resided for more than seven years in an apartment maintained by the authority. At the time the instant matter developed, she lived there with her four children and one grandchild. Ms. Butler was employed by the New York Telephone Company with a take-home salary at the time of the hearing she said was $171 per week. Her gross salary had apparently been increased to $285.75 per week during 1979. Her weekly deductions included an income garnishment of $31 per week. Her rent to the authority was $175.75 per month and had been increased in about October, 1978. In August, 1979, the authority served Ms. Butler with a written notice of intent to terminate her tenancy because of her "Chronic Delinquency in the Payment of Rent". The amended specifications of the charge, admitted by Ms. Butler, showed that she had been late paying her rent 13 times in 13 consecutive months. During that time, the authority had brought three dispossess proceedings, with one final judgment and one warrant of eviction issued. The record does not disclose the dates of the dispossess proceedings or the judgment and warrant. The payment record showed the following:

| RENT DUE | RENT PAID |
| --- | --- |
| 4/1/78 | 5/19/78 |
| 5/1/78 | 5/19/78 |
| 6/1/78 | 6/30/78 |
| 7/1/78 | 8/31/78 |
| 8/1/78 | 8/31/78 |
| 9/1/78 | 11/30/78 |
| 10/1/78 | 11/30/78 |
| 11/1/78 | 11/30/78 |

| 12/1/78 | 2/2/79 |
| 1/1/79 | 2/2/79 |
| 2/1/79 | 2/28/79 |
| 3/1/79 | 3/30/79 |
| 4/1/79 | 4/30/79. |

Ms. Butler appeared *pro se* at the authority's administrative hearing. She said her income was insufficient to enable her to pay rent on time. She admitted that she was in arrears for the current month (September, 1979), but assured the hearing officer that she could make timely payment (by the fifth business day of each month) and said she would be able to make her rent payment for the coming month, October, 1979, by the eighth of the month. The hearing officer said he would keep the record open to determine whether she made her October payment on time, and that her actions would influence him in making his recommendation. When the hearing officer checked, he was advised that Ms. Butler had not paid her rent by 3:23 P.M. on October 9. This is the information the majority describes as dehors the record. The hearing officer recommended termination of Ms. Butler's tenancy. The authority adopted the recommendation and on October 31, 1979 determined to terminate the tenancy. Ms. Butler commenced the instant proceeding in February, 1980. She objected to the determination, arguing, *inter alia,* that it rested on material outside the hearing record (the October, 1979 rental delinquency), that she never failed to pay but was only delinquent, that her delinquency record is not so grievous as the records in previous cases in which termination for chronic delinquency has been permitted, that the decision was arbitrary and capricious, and that it is undisputed that her late payments were due to her inability to pay full rent on the first of each month. Special Term vacated the determination. The authority argues, *inter alia,* that Special Term's decision establishes an unreasonable rule that will encourage delinquency and that the authority's duty and ability "to assure the prompt payment and collection of rents" (US Code, tit 42, § 1437d, subd [c], par [4], cl [B]) will be interfered with and diluted. I believe that Special Term and the majority are incorrect. The record (excluding any references to Ms. Butler's rent arrears for October, 1979) contains more than sufficient evidence to demonstrate that Ms. Butler was chronically delinquent. Her explanation that she did not earn enough to pay her rent regularly each month is insufficient to overcome the evidence of her delinquency or to excuse it. Although the income figures she gives vary, the rent figure is not exorbitant in face of her take-home pay, and she does not claim to have had any unusual or unpredicted expenses during the 13 months in question. Ms. Butler apparently did not ever try to explain her needs to the authority or request that the authority permit her to make bimonthly payments or otherwise work with her so that she could avoid delinquent status. Her payment record for the 13-month period shows that she paid two months' rent on May 19, 1978, three months' rent on November 30, 1978 and two months' rent on February 2, 1979. The record does not disclose whether those large payments were made in response to the dispossess proceedings. However, the record clearly shows that Ms. Butler was able to accumulate enough money to make large, lump payments from time to time. I believe that the record discloses an undisputed and habitual pattern of delinquency which can fairly and accurately be termed chronic. I do not believe that the authority needs to bring a "magic" number of dispossess proceedings to establish that a delinquency record is chronic, nor do I believe that chronic delinquency can be found only after a tenant has been placed on probation or has been regularly delinquent for periods much longer than the 13 months here admitted. I do not believe that chronic delinquency can be found only when a tenant has made

less than full payment. I also do not believe that eviction is an unduly harsh penalty for chronic delinquency in rent payments, even though the payments were all eventually made. Neither public nor private landlords can be expected to fulfill their duties if they are forced to shelter tenants who meet their rent responsibilities with sporadic payments or payments made only to forestall dispossess proceedings. Too many tenants make delinquency a strategy of living.